ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| EVA L. VÉLEZ TORRES, Recurrente, v. IN CONCRETE PR, LLC, Recurrida. | TA2026RA00040 | REVISIÓN procedente del Departamento de Asuntos del Consumidor. Querella núm.: CAG-2025-0006835. Sobre: construcción. |
|---|---|---|

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 11 de marzo de 2026.

La señora Eva L. Vélez Castillo (señora Vélez) presentó su recurso el 22 de enero de 2026. Nos solicita que revisemos la *Resolución* final emitida por el Departamento de Asuntos del Consumidor (DACo) el 30 de noviembre de 2025, notificada el 2 de diciembre de 2025. Mediante el referido dictamen, el foro administrativo ordenó a la parte recurrida, Emil J. Padilla Ferrer, quien hace negocios como In Concrete PR, LLC (In Concrete), que pagara $7,360.00 dólares a la señora Vélez, más los intereses legales correspondientes. Además, apercibió a la parte recurrida que debía devolverle a la recurrente los 4 rollos *de cyclone fence gauge* de 9 ½, o en su defecto, pagar el costo o valor equivalente, que no debía ser una suma menor de $454.92.

Por los fundamentos expuestos a continuación, modificamos la resolución recurrida, y así modificada, la confirmamos.

I

El 26 de marzo de 2025, la señora Vélez presentó una querella sobre arrendamiento de obras y servicios ante el DACo[1]. En síntesis, alegó que, el 11 de diciembre de 2024, contrató a la parte recurrida, Emil J. Padilla

---

[1] *Véase*, apéndice del recurso, entrada 3, SUMAC TA, a las págs. 5-7.

Ferrer h/n/c In Concrete PR, LLC[2], para la remodelación de su residencia. Adujo que este último no completó la remodelación para la que fue contratado y abandonó el proyecto sin justificación alguna. Lo anterior luego de que ya le hubiera pagado alrededor de $25,000.00[3].

Además, alegó que contrató a la parte recurrida para un segundo proyecto, cotizado por $10,000.00, de los cuales pagó $5,000.00, y esta tampoco completó el trabajo. Finalmente, planteó que compró unos rollos de *cyclone fence*[4], que la parte recurrida se llevó so pretexto de guardarlo en un lugar seguro, y que a la fecha de la presentación de la querella aún no había devuelto. En virtud de lo anterior, reclamó el reembolso de **$6,721.00**, por concepto del proyecto de remodelación abandonado, y los **$5,000.00** del segundo proyecto incompleto[5].

El DACo celebró una vista administrativa el 15 de octubre de 2025. No obstante, a pesar de haber sido debidamente notificada, la parte recurrente no compareció, por lo que la agencia recurrida le anotó la rebeldía[6]. Luego de la celebración de la vista, el 30 de noviembre de 2025, el DACo emitió la resolución objeto de este recurso[7].

---

[2] Una búsqueda de la compañía de responsabilidad limitada en el Registro de Corporaciones del Departamento de Estado revela que fue registrada el **9 de noviembre de 2024**, con el número de registro de la compañía es el 541447, y que su agente residente y administrador es el señor Padilla Ferrer.

[3] De los documentos explicativos que la señora Vélez adjuntó a su querella, surge el desglose de los pagos y del presunto trabajo realizado por el contratista recurrido. Resalta que realizó varios pagos ascendentes a $20,163.00 con relación al proyecto 1. En particular, esta alegó haber pagado, $6,721.00 al firmar el contrato y por concepto de la primera etapa del proyecto; $6,721.00, correspondientes a la segunda etapa del proyecto; y $6,721.00 por la tercera etapa del proyecto 1. *Véase*, apéndice del recurso, entrada 3, SUMAC TA, a la pág.8.

[4] Se refiere a un tejido hecho de metal, que sirve para construir verjas. Véase*, Tesoro lexicográfico del español de Puerto Rico*. https://tesoro.pr/lema/cyclone-fence. (última visita el 10 de marzo de 2026).

[5] El 13 de agosto de 2025, la señora Vélez presentó una enmienda a la querella para añadir los costos de almacenaje de materiales, como consecuencia del incumplimiento, así como las costas y honorarios de abogado. *Véase*, apéndice del recurso, entrada 3, SUMAC TA, a las págs. 54-57.

[6] Previo a anotar la rebeldía, el DACo hizo constar en su *Resolución* que, del expediente administrativo, no surgía que las notificaciones y la citación a la vista enviadas a la parte recurrida hubiesen sido devueltas por el servicio postal, por lo que se presumían recibidas. *Íd.*, a la pág. 61.

[7] *Íd.*, a las págs. 61-68.

Como adelantamos, tras exponer sus determinaciones de hechos[8] y de derecho, la agencia ordenó a la parte recurrida que reembolsara a la recurrente un total de **$7,360.00**, y le devolviera los materiales que se había llevado o, en la alternativa, su costo. A su vez, le otorgó un término para remover lo construido, so pena de la imposición de una multa administrativa que podría ascender a $10,000.00.

Inconforme con la determinación, el 8 de diciembre de 2025, la señora Vélez presentó una solicitud de reconsideración[9]. En síntesis, adujo que el foro administrativo había errado en cuanto a la cuantía que debía devolver el contratista y al ordenarle que removiera lo construido.

El 22 de diciembre de 2025, notificada al día siguiente, el DACo emitió una resolución mediante la cual acogió la solicitud de reconsideración de la señora Vélez y eliminó la orden de remover lo construido. No obstante, nada dispuso sobre la cuantía adicional reclamada.

Aún inconforme, el 22 de enero de 2026, la señora Vélez compareció y formuló los siguientes señalamientos de error:

> Erró el DACo al anotar la rebeldía a la parte recurrida, sin embargo, no considerar como admitidas las alegaciones de la recurrente y, por el contrario, cuestionó los hechos bien alegados por la recurrente y en otras instancias realizó una evaluación errónea de los hechos.

> Erró el DACo con sus conclusiones de derecho al determinar que la parte recurrida tenía derecho a retener la suma de $17,640.00, de un total de $25,000.00, a pesar de haber concluido que la parte recurrida había incumplido el contrato de obra.

(Énfasis omitido).

---

[8] En lo pertinente, en sus determinaciones de hechos, el DACo expuso que, conforme al contrato suscrito por las partes, los pagos relacionados con el proyecto de remodelación serían desembolsados por etapas. A su vez, dispuso que la parte recurrida solo completó la primera y segunda etapa del primer proyecto, mientras que del segundo proyecto solo completó la primera. Finalmente, **puntualizó que la señora Vélez no había presentado prueba sobre la valorización del trabajo realizado, ni sobre el estimado de los trabajos por realizar**. *Véase*, apéndice del recurso, entrada 3, SUMAC TA, a las págs. 61-63.

[9] *Íd.*, a las págs. 69-71.

Dada la naturaleza de los errores señalados, el 9 de marzo de 2026, la señora Vélez presentó la transcripción de la prueba oral (TPO), junto a su alegato suplementario.

En esta ocasión, prescindimos de la comparecencia de la parte recurrida y resolvemos[10].

II

La norma reiterada es a los efectos de que las decisiones de los organismos administrativos merecen la mayor deferencia judicial, pues son estos los que cuentan con el conocimiento experto de los asuntos que les son encomendados. *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021). Además, al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad de la actuación de la agencia. *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013). Debido a que toda sentencia o determinación administrativa está protegida por una presunción de corrección y validez, la parte que acude a este Tribunal de Apelaciones tiene el deber de colocar a este foro en posición de conceder el remedio solicitado. *Morán v. Martí,* 165 DPR 356, 366 (2005).

A su vez, el estándar de revisión judicial en materia de decisiones administrativas se circunscribe a determinar: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hechos de la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo; y, (3) si las conclusiones de derecho fueron correctas. *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010).

Así pues, como norma general, las determinaciones de hechos de organismos y agencias "tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no

---

[10] Hacemos constar que, tanto el recurso de revisión judicial de la decisión final administrativa presentado por la señora Vélez, como todas las resoluciones emitidas por este foro, han sido notificadas al señor Emil J. Padilla Ferrer, agente residente de In Concrete PR, LLC, a su correo electrónico. De igual forma, se han remitido las notificaciones al correo electrónico de In Concrete PR, LLC.

produzca evidencia suficiente para derrotarlas". *Vélez v. A.R.Pe.*, 167 DPR 684, 693 (2006). Por ello, la revisión judicial ha de limitarse a determinar si la agencia actuó de manera arbitraria, ilegal, irrazonable, o fuera del marco de los poderes que se le delegaron. *Torres v. Junta Ingenieros*, 161 DPR 696, 708 (2004).

De otra parte, las conclusiones de derecho de las agencias administrativas serán revisables en toda su extensión. *Vázquez, et al. v. DACo*, opinión de 21 de mayo de 2025, 2025 TSPR 56, a la pág. 28, 215 DPR ___; *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR, a la pág. 941. Sin embargo, esto no significa que los tribunales podemos descartar libremente las conclusiones e interpretaciones de la agencia. *Otero v. Toyota*, 163 DPR 716, 729 (2005).

En fin, como ha consignado el Tribunal Supremo de Puerto Rico, la deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales. *Super Asphalt v. AFI y otro*, 206 DPR, a la pág. 819, que cita a *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).

III

En síntesis, la señora Vélez señala que el DACo, luego de determinar que el recurrido había incumplido con el contrato de obras y servicios suscrito por ellos, erró en el cálculo de la cantidad que debía devolverle. En particular, aduce que resolver que la parte recurrida tenía derecho a retener $17,640.00 de los $25,000.00 cotizados por la totalidad

de los proyectos, resultaba contrario a lo establecido mediante la prueba desfilada y no controvertida.

Arguye que la determinación recurrida no estuvo sustentada en el expediente administrativo y no es cónsona con el derecho aplicable. Señala que, al declarar en rebeldía a la parte recurrida, debía considerar como admitidas las alegaciones de la parte recurrente. No obstante, aun cuando no se presentó prueba en contrario, el DACo cuestionó los hechos bien alegados por la recurrente y, en otras instancias, realizó una evaluación errónea de los hechos.

Además, resalta que, contrario a lo alegado a los efectos de que la parte recurrida no había realizado los trabajos para los que fue contratada, el DACo determinó, erróneamente, que se había completado la primera y segunda etapa del primer proyecto, por lo que solo correspondía la devolución de los pagos por las fases no iniciadas. Sostuvo que, ante el incumplimiento, tenía derecho a que se le concediera una indemnización, que fuera equivalente al costo o cantidad de dinero necesario para poder completar la remodelación, y que además procedía la devolución de cualquier dinero pagado en exceso, más una compensación por los daños que se le ocasionaron.

Insiste en que la obligación incumplida por la parte recurrida no se circunscribe a las fases del proyecto, sino a la remodelación de la residencia completa y, por tanto, la cantidad adeudada era mayor a la ordenada. Cónsono con lo anterior, la recurrente sostiene que la agencia debió considerar que, en su solicitud de reconsideración, la señora Vélez detalló que el costo para poder culminar la obra y reparar cualquier deficiencia era de $36,000.00, además de los $25,000.00 que le había pagado a la parte recurrida por el trabajo inconcluso.

Añade que los daños sufridos se estiman en alrededor de $61,000.00, sin contar el gasto adicional por la compra de materiales. De igual manera, propone que se debe añadir el gasto por el almacenaje de

las puertas y ventanas, el cual aduce que el DACo también descartó, sin considerar los hechos alegados y no controvertidos.

Por su parte, el DACo determinó que de la prueba vertida y no controvertida surge que la obra no fue completada y que la parte recurrida abandonó la misma. Por tanto, concluyó que correspondía a esta última pagarle a la señora Vélez un total de **$7,360.00**. La referida cantidad, representa un reembolso de $3,360.00, por la mitad de lo pagado correspondiente a la 3ra fase del proyecto de remodelación no completado, y **$4,000.00** de los $5,000.00 pagados por el segundo contrato, también iniciado, mas no completado.

Como señalamos, en nuestro ordenamiento jurídico las determinaciones de hechos de organismos y agencias tienen a su favor una presunción de regularidad y corrección que debe ser respetada, mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas. Por ello, nuestra revisión ha de limitarse a determinar si la agencia actuó de manera arbitraria, ilegal, irrazonable, o fuera del marco de los poderes que se le delegaron.

De otra parte, resaltamos que el trámite en rebeldía tiene como consecuencia jurídica que se estimen aceptadas todas y cada una de las materias bien alegadas en la demanda o, como en este caso, la querella[11]. Ahora bien, para que la agencia descargue su función adjudicativa de un pleito en rebeldía, el proceso exige la comprobación de cualquier aseveración mediante prueba. Es decir, si para que la agencia pueda dictar una resolución en rebeldía le es necesario comprobar la veracidad de cualquier alegación o hacer una investigación sobre cualquier otro asunto, deberá celebrar las vistas que estime necesarias y adecuadas. Por tanto,

---

[11] En la esfera civil, la figura de la *rebeldía* está regulada por la Regla 45 de Procedimiento Civil, 32 LPRA Ap. V, Ahora bien, como norma general, las Reglas de Procedimiento Civil no aplican automáticamente a los procedimientos administrativos. *SLG Saldaña-Saldaña v. Junta*, 201 DPR 615, 623 (2018); *Pérez v. VPH Motor Corp.*, 152 DPR 475, 484 (2000*).* No obstante, el Tribunal Supremo de Puerto Rico ha reiterado que nada impide que en casos apropiados se adopten normas de las referidas reglas para guiar el curso del proceso administrativo, cuando las mismas no sean incompatibles con dicho proceso y propicien una solución justa, rápida y económica. *SLG Saldaña-Saldaña v. Junta*, 201 DPR, a la pág. 623; *Hosp. Dr. Domínguez v. Ryder*, 161 DPR 341, 346 (2004*); Pérez v. VPH Motor Corp.*, 152 DPR, a la pág. 485.

la anotación de la rebeldía no garantiza que la parte querellante habrá de obtener una sentencia favorable.

Luego de revisar la totalidad del expediente administrativo, la TPO y la postura de la parte recurrente, a la luz del derecho aplicable, concluimos que el DACo tuvo ante sí toda la prueba documental y testifical necesaria para adjudicar la controversia. Ahora bien, en cuanto al remedio otorgado con relación al proyecto 1, concluimos que el DACo no erró. Del testimonio de la señora Vélez surge que ella emitió cuatro pagos correspondientes a las primeras tres fases del proyecto[12]. Cada pago realizado previo a que iniciara la próxima etapa; ello, a pesar de que en el contrato se había establecido que se pagarían según se fuesen completando. Asimismo, a preguntas de la jueza administrativa, la señora Vélez expuso que la recurrida había hecho algún adelanto en las obras solicitadas hasta mediados de la 3ra fase del proyecto 1, aunque puntualizó que se trataba de trabajo defectuoso.

Es en virtud de este testimonio que la agencia recurrida concluyó que correspondía que se devolviera la mitad de lo pagado por el trabajo correspondiente a la tercera etapa. Ciertamente, ello va acorde a lo solicitado en la querella original, en la que la señora Vélez también expresó que se trabajó en el primer proyecto hasta la 3ra fase[13].

En cuanto al segundo proyecto, cuyo fin era la extensión de la propiedad, y para el que se cotizó $10,000.00, surge del testimonio de la señora Vélez que esta le pagó a la parte recurrida $5,000.00[14]. En relación con este proyecto, no se suscribió contrato alguno. No obstante, la señora

---

[12] *Véase*, transcripción de la prueba oral (TPO), a las págs. 34, 37, 42 y 44. En síntesis, la señora Vélez relató que, en un principio, los pagos emitidos a la parte recurrida respondieron a que esta última, a pesar de estar retrasada en la entrega del proyecto, trabajó la primera y segunda etapa del proyecto con cierta velocidad. En específico, expresó: "yo le pagué porque estaba trabajando rápido, y yo tenía la urgencia de que me completara ese trabajo". *Íd.*, a la pág. 41.

[13] Si bien la señora Vélez destacó en su querella que había hecho pagos al señor Padilla por una cantidad ascendente a $25,000, en su petitorio dispuso**:** "deseo que termine proyecto I y II y entregue *cyclonfence* o que devuelva *cyclonfence* + **$6,721 de fase III no terminada** y $5,000 fase II**".** (Énfasis nuestro). *Véase*, apéndice del recurso, entrada 3 SUMAC TA, a la pág. 73.

[14] *Véase*, TPO, a la pág. 44.

Vélez expuso que la parte recurrida, a razón del pago recibido, instaló unas varillas como inicio de ese segundo proyecto. A este trabajo, el DACo le otorgó unilateralmente el valor de $1,000.00, por lo que dispuso que solo correspondía que se devolviera $4,000.00 de los $5,000.00 pagados por la señora Vélez.

No coincidimos con la apreciación de la agencia en cuanto a este trabajo. La instalación de la varilla no constituye siquiera un cumplimiento parcial del trabajo para el que fue contratada la parte recurrida. En atención a ello, concluimos que corresponde que se le devuelva la totalidad de la partida pagada por la señora Vélez a estos efectos; es decir, $5,000.00.

En cuanto al resto de las partidas reclamadas, y las alegadas en la querella enmendada, coincidimos con la agencia recurrida en cuanto a que no se presentó prueba fehaciente, que demostrase pago alguno por el cual se pudiera justificar otorgar las mismas.

En conclusión, no hallamos indicios que sugieran que el DACo hubiera actuado de manera arbitraria, ilegal, irrazonable o fuera del marco de los poderes que se le delegaron.

IV

Por los fundamentos antes expuestos, modificamos la cuantía otorgada para que, además de los **$3,360.00** que la parte recurrida deberá devolver a la señora Vélez por concepto de la 3ra fase del proyecto de remodelación no completado, y la devolución del *cyclone fence gauge* de 9 ½ o su valor, que no deberá ser una suma menor de **$454.92**, le devuelva **$5,000.00**, cuantía pagada por concepto del segundo proyecto contratado, para un total adeudado por la recurrida a la señora Vélez de **$8,814.92**.

Así modificada, confirmamos la *Resolución* emitida el 30 de noviembre de 2025, por el Departamento de Asuntos del Consumidor.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones